IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

**************************************
UNITED STATES OF AMERICA

                                       GOVERNMENT'S SENTENCING
                                       MEMORANDUM

       v.

                                       Case No.:  5:14- CR-088 (EAW)

JOSEPH JENKINS,
        Defendant.
**********************************

      The United States of America, by and through its counsel of record, the United States Attorney for the Northern District of New York, hereby files its sentencing memorandum requesting that the court sentence the defendant to a term of incarceration within the applicable guideline imprisonment range of 27-33 months.  Additionally, the government seeks a term of supervised release following his incarceration, an order for restitution to the Criminal Justice Act Fund in the amount of $8,049.12, and the imposition of a fine in the amount of $25,000.  If the court is considering a sentence of incarceration below the applicable guideline range, the government would ask for the imposition of a fine at the top end of the fine guideline range ($5,000 to $50,000) to serve as a specific deterrent for the defendant's criminal conduct.

# I

# INTRODUCTION

On April 1, 2015, the defendant was convicted by a jury of one count of perjury in violation of 18 U.S.C. § 1621(2). The defendant is scheduled to be sentenced on January 22, 2016.

# II

# APPLICABLE STATUTORY AND GUIDELINES PROVISIONS

### A. Statutory Maximum and Minimum Sentences

The defendant's conviction for perjury in violation of 18 U.S.C. § 1621(2) subjects the defendant to a statutory maximum term of 5 years imprisonment; a term of supervised release of not more than 3 years; and a maximum fine of $250,000. *See* 18 U.S.C. § 3571. A special assessment of $100 is mandatory, pursuant to 18 U.S.C. § 3013.

### B. Guidelines Provisions

### 1. Offense Level

Under the federal sentencing guidelines, the "base offense level" for the defendant's conviction for perjury is 14. *See* U.S.S.G. § 2J1.3. The base offense level should be increased by 3 pursuant to U.S.S.G. § 2J1.3, as the offense resulted in substantial interference with the administration of justice. As noted in the presentence investigation report ("PSR"), Application Note 1 of the United States Sentencing Guidelines provides examples of substantial interference with the administration of justice. The examples include: "a premature or improper termination of a felony investigation; an indictment, verdict, or any judicial determination based upon perjury, false testimony, or other false evidence; or the unnecessary expenditure of substantial governmental or court resources." U.S.S.G. § 2J1.3, Application Note 1.

The defendant engaged in conduct that substantially interfered with the administration of justice in two significant ways. First, there was a substantial interference with the administration of justice because there was a judicial determination based upon perjury. In this case, the defendant willfully subscribed as true a material matter which he did not believe to be true, that is, the Criminal Justice Act Form 23-Financial Affidavit, signed by him under penalty of perjury and sworn by him to be true. The defendant concealed his assets on the Form 23-Financial Affidavit and submitted that form to the United States District Court for the Northern District of New York in order to obtain judicially-ordered assigned counsel. United States Magistrate Judge Andrew T. Baxter reviewed the Form-23 and made a judicial determination-that is finding the defendant eligible for assigned counsel and appointing attorney Jeffrey Parry to represent the defendant-based upon the defendant's perjury. As the jury's verdict so reflected, the judicial determination for assignment of counsel was based upon perjury, therefore the 3-level enhancement under § 2J1.3 applies.

Second, the defendant's conduct resulted in the unnecessary expenditure of substantial governmental or court resources. As detailed in paragraph 23, of the PSR and in the court docket, the defendant's conduct resulted in the unnecessary expenditure of substantial governmental resources <u>and</u> court resources. First, attorney Jeffrey Parry, at the expense of the court, represented the defendant for over a year, and took the following actions as noted on the docket: an appearance at the October 6, 2011 detention hearing; the submission of a letter requesting a waiver of a preliminary hearing on October 12, 2011; the submission of a letter requesting a detention hearing on December 14, 2011; an appearance at a second detention hearing on December 16, 2011; an appearance on January 5, 2012, for an arraignment and a hearing on defendant's request to reopen his detention hearing; multiple joint stipulations to

continue trial dates; the submission of a motion for an extension of time to file motions submitted on June 29, 2012; the submission of a motion for omnibus relief filed July 9, 2012; the submission of a motion to appoint an expert filed on July 30, 2012; the submission of a motion for an extension of time to file a response motion to government's motion for disclosure of the financial affidavit filed September 4, 2012; the filing of a response in opposition to the government's motion for disclosure of the financial affidavit filed September 7, 2012; the filing of a second motion for omnibus relief filed October 19, 2012; the filing of a supplemental brief in opposition to government motion to examine defendant's eligibility for counsel filed October 19, 2012; the submission of a motion for extension of time to submit a CJA-20 voucher submitted November 26, 2012, and subsequent submission of a CJA-20 voucher. *See* Court Docket, Case 5:11-cr-00602 (GTS). To prepare for each of these actions, attorney Parry would have had to have met with the defendant and review discovery. Attorney Parry did meet with the government on multiple occasions. As noted in the PSR, attorney Parry submitted a voucher for $22,912.50 in claimed fees and expenses for his work on the defendant's case. Ultimately, the court convened a panel to review the fees and the defendant was ordered to reimburse the Criminal Justice Act fund $8,049.12 on March 4, 2013. The defendant has not reimbursed the fund, despite being so ordered.

In addition to the work performed by Attorney Parry, the Government, upon learning of his attempt to hide assets opened an investigation and issued grand jury subpoenas to multiple banks. The government: expended time and money to obtain copies of the financial records obtained via subpoena; assigned an agent to review the records; and convened a grand jury to review the records. Additionally, the government transcribed the jail calls; made motions before the court to review the financial affidavit; made a motion to the court to review the defendant's

eligibility for assigned counsel; and participated in multiple hearings regarding his representation, or lack thereof.

The court expended substantial resources on the defendant extending far beyond paying for the services of Jeffrey Parry, as noted in paragraph 23 of the PSR.  Significantly, once the defendant was charged with perjury, and refused to hire an attorney, the Honorable United States Magistrate Judge David E. Peebles assigned counsel in the interest of justice noting concerns that if the defendant completed another financial affidavit he might commit perjury.  Later on, this Court found the defendant ineligible for assigned counsel (after the defendant fired his court-appointed counsel) and denied his demand for the appointment of counsel of his choosing. When this Court found the defendant ineligible for assigned counsel, due to the garnishment action, he had less assets available than when Judge Peebles assigned him counsel.  One need only glance at the docket sheet and review the entire docket to see the substantial resources expended as a result of the defendant's perjury.

The defendant objected to the imposition of this enhancement arguing first, that it is inapplicable for his offense of conviction, and second that the government had the information he is alleged to have concealed.  The government noted its disagreement in a letter to probation dated November 20, 2015 which was incorporated into the final PSR; probation notes its agreement that the 3-level enhancement for substantial interference with the administration of justice applies in the final PSR.  For the reasons now noted, and noted in the government reply in the final PSR, the 3-level enhancement for substantial interference with the administration of justice applies.

   2.   **Acceptance of Responsibility**

The defendant is not entitled to any downward adjustment to his offense level for

acceptance of responsibility.  *See* PSR ¶29.

### 3. Criminal History Category

According to the presentence report, the defendant's criminal history category is II.  The government agrees with the Probation Office's determination of the defendant's criminal history category.

### 4. Guidelines Range and Sentence

As described above, the combined offense level is 1.  Absent any departures, the federal sentencing guidelines advise that the defendant receive a sentence of 27 to 33 months; a fine of $5,000 to $50,000 and a supervised release term of no more than 3 years.

### 5. Restitution

The defendant was ordered to reimburse the United States District Court $8,049.12.  *See* Case 5:11-CR-00602, Doc. 54, March 4, 2013 (the docket entry notes an order for reimbursement in the amount of $8,048.12, but the actual Order for Distribution of Available Private Funds indicates reimbursement of $8,049.12).  To date, the defendant has failed to do so. *See* PSR ¶¶ 15, 49.  The defendant noted in his first objection to the PSR regarding paragraph 15, filed July 6, 2015, at document 78, that he did not receive any order regarding his termination of counsel or the order of reimbursement; and, as he was not aware of said order, the order cannot be enforced.  *Id.* at Objections, page 22.  A copy of the order was distributed to the defendant, as noted in the Order Terminating Appointment of Counsel and/or Authorization for Distribution of Available Private Funds.  *See* Document 54.

As the defendant has not reimbursed the United States District Court, as ordered, and as the Criminal Justice Fund sustained a loss as a result of the defendant's criminal conduct, that is the perjury, an order of restitution would be proper and appropriate.  The District Court, in the

March 4, 2013 order found that the funds were available from Joseph Jenkins for payment of court-appointed counsel necessary for his representation. No immediate appeal from that decision was filed by the defendant, nor has the District Court initiated contempt proceedings for his failure to pay. The district court has authority to order that restitution be applied toward payment of court-appointed counsel. *See United States v. Hoover*, 175 F.3d 564 (7th Cir. 1999). Circuit courts are split regarding whether that the repayment of attorneys' fees can be ordered as a condition of supervised release. *See United States v. Moore*, 666 F.3d 313, 325 (4th Cir. 2012)(compare *Evans*, 155 F.3d at 250–52 & n. 8 (rejecting imposition of counsel fees as a condition of supervised release because it is not consistent with the statutory goals of 18 U.S.C. § 3553(a)(2)(B)–(D), but recognizing that the court could impose a separate reimbursement order under § 3006A(f)); *United States v. Eyler*, 67 F.3d 1386, 1393 (9th Cir.1995) (reimbursement of counsel fees cannot be a condition of supervised release); *United States v. Turner*, 628 F.2d 461, 466–67 (5th Cir.1980) (same as to probation); with *United States v. Merric*, 166 F.3d 406, 411–12 (1st Cir.1999) (declining to follow Judicial Conference recommendation that prohibits reimbursement of CJA fees as a "condition of probation," see VII Administrative Office of U.S. Courts, Guide to Judiciary Policies & Procedures, ch. 2, pt. A, § 230.40(d), and instead holding that a district court could make repayment of CJA fees a condition of supervised release); *United States v. Gurtunca*, 836 F.2d 283, 288–89 (7th Cir.1987) (repayment of counsel fees is a permissible condition of probation); *United States v. Santarpio*, 560 F.2d 448, 455–56 (1st Cir.1977) (same).

## III

## GOVERNMENT'S SENTENCING RECOMMENDATION

Based on all of the information before the Court, the government respectfully requests that the Court sentence the defendant to a term of incarceration within the applicable guideline imprisonment range of 27-33 months. Additionally, the government seeks a term of supervised release following his incarceration, and the imposition of a fine in the amount of $25,000 and the imposition of the special assessment of $100. An order of restitution for $8,049.12 is also appropriate. If the court is considering a sentence of incarceration below the applicable guideline range, the government would ask for the imposition of a fine at the top end of the fine guideline range ($5,000 to $50,000) to serve as a specific deterrent for the defendant's criminal conduct. The government maintains that such a sentence is sufficient, but not greater than necessary to comply with the sentencing purposes in 18 U.S.C. § 3553(a)(2).

Joseph Jenkins has a reputation for being frugal with his money. *See* PSR ¶48. Jenkins had a sizeable estate when he was arrested and charged with transporting and possessing child pornography in October 2011. The beneficiary of a trust fund, Jenkins lived in his parents' residence in Geneva, New York. *Id.* at 50. At the time of his arrest, his financial portfolio included investment accounts exceeding $168,000, in excess of $37,000 in money market accounts and funds in personal checking accounts, savings accounts, and business accounts, for Jenkins Electric, the business he owned. *Id.* Moreover, Jenkins had an all-terrain vehicle, a truck, boats and trailers. *Id.* at 50, 51. The wealth accumulated by the defendant and owned by him in October 2011 was proven at his jury trial. Even after an order of garnishment, brought in relation to court-ordered fees and restitution on the Child Pornography case, Jenkins still owns

investment accounts with balances that exceed $94,000 as of March 2015. *Id.* at Objections, PSR, page 26.

Instead of honestly and accurately completing the financial affidavit and disclosing his substantial assets, Jenkins instead chose to conceal his assets to qualify for assigned counsel. Jenkins intent was clear, he wanted a free attorney. *See* PSR ¶7. Also clear was his awareness that he needed to hide his money-the money he failed to disclose on the financial affidavit-when he instructed his father to start transferring money and accounts from Jenkins name to his father's name. *Id.* at ¶6. Jenkins noted, with regard money and IDS accounts, that he had to "get rid of them here." *Id.* Jenkins wanted the free attorney and started directing his father to move money out of his checking account by writing small checks and moving the money every few days. *Id.* Jenkins lived a life of privilege-the privilege of a free lawyer was not one for which he was entitled yet, he took it, abusing a system designed for the needy and indigent and not beneficiaries of trust funds.

The mission of the Defender Services program, administered by the United States Courts is to "ensure that the right to counsel guaranteed by the Sixth Amendment, the Criminal Justice Act (18 U.S.C. § 3006A), and other congressional mandates is enforced on behalf of those who cannot afford to retain counsel and other necessary defense services." *See* <u>www.uscourts.gov/services-forms/defender-services/mission-defender-services</u> (last visited January 12, 2016). The essence of the program is to make sure that those who are unable to bear the cost of representation, have access to equal justice and effective representation. The defendant could afford to retain counsel, and in taking from a fund, with finite resources, designed to benefit the indigent, the defendant cheated the Court and the assigned The mission of the Defender Services program, administered by the United States Courts is to "ensure that the

right to counsel guaranteed by the Sixth Amendment, the Criminal Justice Act (18 U.S.C. § 3006A), and other congressional mandates is enforced on behalf of those who cannot afford to retain counsel and other necessary defense services."  See *www.uscourts.gov/services-forms/defender-services/mission-defender-services* (last visited January 12, 2016).  The essence of the program is to make sure that those who are unable to bear the cost of representation, have access to equal justice and effective representation.  The defendant could afford to retain counsel, and in taking from a fund, with finite resources, designed to benefit the indigent, the defendant cheated the Court and the assigned counsel program.
 counsel program.

## CONCLUSION

Given all of these considerations, a Guidelines sentence is warranted, justified, and sufficient but not greater than necessary to account for the nature and circumstances of the offense and the seriousness of the crime, while promoting respect for the law, providing just punishment, and protecting the public from future crimes of the defendant.  18 U.S.C. §3553(a).


Dated:  January 12, 2016                          RICHARD S. HARTUNIAN
                                                  United States Attorney


                                         By:     */s/ Tamara B. Thomson*
                                                  Tamara B. Thomson
                                                  Assistant United States Attorney
                                                  Bar Roll No. 515310

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

**********************************

| | |
|---|---|
| UNITED STATES OF AMERICA | GOVERNMENT'S SENTENCING MEMORANDUM |
| v. | Case No.:  5:14-CR-88 (EAW) |
| JOSEPH JENKINS,<br>       Defendant. | |

**********************************

### CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2016, I filed the **Government's Sentencing Memorandum** with the Clerk of the District Court and sent copies of said documents via ECF to the following:

Joseph Jenkins, *pro se* (via U.S Mail)
Daniel DeMaria, Esq.

                                                              */s/ Anthony Keach*
                                                              Anthony Keach
                                                              Legal Assistant