UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

--------------------------------------------------------x

UNITED STATES OF AMERICA

                    vs.

JOSEPH JENKINS

                          Defendant.

Case No. 14 Cr. 88 (EAW)

--------------------------------------------------------x

**DEFENDANT'S SENTENCING MEMORANDUM**

Daniel DeMaria, Esq. (518452)
Merchant Law Group LLP
535 Fifth Avenue, Fl. 25
New York, New York 10017
Tel: 212-658-1455
Fax: 877-607-5419
ddemaria@nyslitigators.com

## OVERVIEW

Mr. Jenkins' saga will one day be cited as an example of an injustice. What began as five deleted pictures in Canada, and a one year plea offer in Canada, somehow morphed into a n absolutely absurd 225 month sentence, followed by a wasteful and misguided attempt to prosecute Mr. Jenkins for alleged perjury. The latter is particularly troubling in circumstances where Mr. Jenkins was deprived of his right to a recording/transcript from the hearing at issue in the perjury prosecution - a transcript which may have exonerated him.

Mr. Jenkins has been detained on federal child pornography charges since October 4, 2011. On November 12, 2014, he was sentenced to serve 225 months in federal prison (based on an improperly calculated and grossly inflated sentence) after he was convicted of Transportation and Possession of Child Pornography. His projected release date is February 2, 2028. For the reasons stated below, it is respectfully submitted that the Court should impose a sentence of one month, to run concurrently with the sentence which Mr. Jenkins is currently serving. While Mr. Jenkins' guideline range (as calculated by the probation office) is 27 to 33 months, it is respectfully submitted that the application of the statutory sentencing factors provided in 18 U.S.C. § 3553(a)(2) require a downward variance to a one month term of imprisonment, to be served concurrently. Such a sentence is "sufficient, but not greater than necessary" to achieve the purposes of sentencing pursuant to 18 U.S.C. §3553(a)(2).

## OBJECTIONS TO THE PSR

Mr. Jenkins respectfully objects to paragraph 23 of the PSR and states that the three level enhancement set out in §J1.3(b)(2) does not apply. The false statements, which Mr. Jenkins purportedly made in support of an application for court-appointed counsel, were made by way of

an unsworn declaration which did not contain the statutory language set out at 28 U.S. Code § 1746. In United States v. Duranseau, 19 F.3d 1117 (6th Cir., 1994), the Court held that USSG § 2J1.3 did not apply to the sentencing of a person who made a false statement in an unsworn declaration which was submitted in support of an application for court-appointed counsel. The court rejected the government's argument that the perjury guideline was properly applied by the District Court because the defendant had signed the "financial affidavit," noting that the "financial affidavit," although titled an affidavit, was not really an affidavit since it was not sworn to or affirmed before some person legally authorized to administer an oath or affirmation and concluded that the defendant had not committed perjury by filing the form. Jenkins further asserts that the Government already had most of the information which he allegedly concealed, and so pursuant to United States v. Jones, 900 F.2d 512 (2nd Cir. 1990), the enhancement set out at U.S.S.G. § 2J1.3 does not apply.[1]

Mr. Jenkins also respectfully objects to para. 57 of the PSR which states in pertinent part: "the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment." Mr. Jenkins respectfully states that the Court may not impose a consecutive sentence in this case due to the fact that the Sixth Amendment requires that facts (other than prior convictions) necessary to imposing consecutive sentences be found by the jury or admitted by the defendant. This position is supported by the Supreme Court's decision in Southern Union Co. v. United States, 132 S.Ct. 2344 (2012).

---

[1] See also Exhibit "A", titled "Financial Information" which shows that Mr. Jenkins disclosed to pre-trial services assets such as a boat and an ATV - which he was alleged at trial not to have disclosed.

In <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000), the Supreme Court held that the Sixth Amendment reserves to juries the determination of any fact, other than the fact of a prior conviction, that increases a criminal defendant's maximum potential sentence. The Apprendi rule was recently broadened in <u>Alleyne v. United States</u>, 133 S. Ct. 2151 (2013) where the Supreme Court held that since mandatory minimum sentences add to the punishment for a crime, any fact that enhances a mandatory minimum sentence is an "element" of the crime that must be submitted to the jury.

In <u>Southern Union Co.</u>, supra, the Supreme Court implicitly overruled its 5-4 decision in <u>Oregon v. Ice</u>, 555 U.S. 160 (2009) which erroneously held that the Sixth Amendment does not inhibit states from assigning to judges, rather than juries, the finding of facts necessary to the imposition of consecutive, rather than concurrent, sentences for multiple offenses. As stated in <u>Southern Union Co</u>, supra:

> This Court has repeatedly affirmed Apprendi's rule by applying it to a variety of sentencing schemes that allow judges to find facts that increase a defendant's maximum authorized sentence. See Cunningham, 549 U. S., at 274 275; United States v. Booker, 543 U. S. 220 –227; Blakely v. Washington, 542 U. S. 296 –300; Ring v. Arizona, 536 U. S. 584 –589; Apprendi, 530 U. S., at 468–469.

Importantly the Supreme Court goes on to state:

> Apprendi's "core concern"—to reserve to the jury "the determination of facts that warrant punishment for a specific statutory offense," Ice, 555 U. S., at 170—applies whether the sentence is a criminal fine or imprisonment or death.

In the case at bar, U.S.S.G. §5G1.3(d) states:

> (A)In General. Under subsection (c), the court may impose a sentence concurrently, partially concurrently, or consecutively to the undischarged term of imprisonment. In order to achieve a reasonable incremental punishment for the instant offense and avoid unwarranted disparity, the court should consider the following:

(i) the factors set forth in 18 U.S.C. § 3584 (referencing 18 U.S.C. § 3553(a)).

…

(v) any other circumstance relevant to the determination of an appropriate sentence for the instant offense.

Flowing from the Sixth Amendment, <u>Appendi</u> and <u>Southern Union Co.</u>, Jenkins respectfully asserts that it was for the jury to consider whether "the factors set forth in 18 U.S.C. § 3584 (referencing 18 U.S.C. § 3553(a))" and "any other circumstance relevant to the determination of an appropriate sentence for the instant offense") warranted that his sentence in the current case run concurrently or consecutively to the 225 month sentence for which he is currently incarcerated.

In addition to the foregoing, Mr. Jenkins also maintains all of his previous objections which are set out pages 21 to 30 of the PSR, though he regrets the comments which he made about Judge Suddaby.

## SENTENCING LAW

18 U.S.C. § 3553(a) directs sentencing courts to impose a sentence sufficient, but not greater than necessary, to comply with the following:

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, 18 U.S.C. § 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense, the history and characteristics of the defendant and the need to provide restitution to any victims of the offense.

Under 18 U.S.C. § 3661, "no limitation shall be placed on the information concerning the background, character, and conduct of [the defendant] which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." This statutory language overrides the advisory policy statements in Part H of the sentencing guidelines, which list as "not ordinarily relevant" to sentencing a variety of factors such as the defendant's age, educational and vocational skills, mental and emotional conditions, drug or alcohol dependence, and lack of guidance as a youth. See U.S.S.G. § 5H1.

1. **History and Characteristics of the Defendant**

Joseph Jenkins is 45 years old. He will be turning 46 years old on the day of sentencing. He has no criminal history other than the related child pornography case. He is an electrician by trade and had operated his own business for more than 20 years. Up until his arrest for this offense, he was a very supportive loving son and responsible employer. Everything changed on October 4th, 2010 when he was improperly arrested at his home in the United States for alleged possession of child pornography in Canada. His life was effectively destroyed and his world was turned upside down. For the past 5 years, he has struggled with the emotional toll the arrest has taken on him and his elderly parents. He has been in local custody for the past three years and has lost virtually everything he acquired through his hard work and skill as an electrician.

It is undisputed that Mr. Jenkins has led a law abiding productive life and there is nothing in his history that would indicate he is in any way a danger to the community or even at risk of re-offending.

2. **Nature and Circumstances of the Offense**

Mr. Jenkins is alleged to have perjured himself on CJA Form 23. Mr. Jenkins denies this allegation, and maintains his innocence. Mr. Jenkins asserts the following. First, he was under great stress following his arrest, in part due to lack of prior involvement with the criminal justice system, as well as the fact that he was taken into custody at gun point after HSI agents inexplicably kicked down the door down to his parents' house - "Rambo style". Mr. Jenkins was concerned for his safety and the safety of his home. Additionally, Mr. Jenkins' had already retained counsel twice in connection with his arrest for child pornography in Canada and he had so advised the Court.

Following his arrest, Mr. Jenkins' was presented in front of Magistrate Baxter. Prior to his presentment, Mr. Jenkins had been in a meeting with a public defender when a court official interrupted his meeting so that she could complete the a financial information form with information. Mr. Jenkins indicated to her that he did have all the necessary information, but she prodded him to give her the information to complete the form anyway. Mr. Jenkins' did not fill out the form himself. As noted, Mr. Jenkins' was under great stress during the interview, did not have any of his financial information, did not personally complete the form, and did not carefully review the form prior to signing it due to the stress of the situation. At no time, did the clerk advise him that he was completing the form under penalty of perjury. Mr. Jenkins' did not appreciate the seriousness of the situation. Perplexingly, there is no transcript, and no recording of what transpired during Mr. Jenkins' presentment. Thus, rather than being able to base its decision on an official and exact record

of what transpired, the jury (in this unprecedented case) was improperly forced to base its decision on testimony - testimony from a very busy Magistrate Judge and other Government employees who described an incident which happened 3.5 years prior to trial. There can be no doubt that the Magistrate Judge and his court clerk presided over dozens, if not hundred of presentments, since Mr. Jenkins' presentment and the accuracy of their specific recollection in this case may be called into question due to the lapse of time. This is precisely why proceedings in Federal Court are *always* recorded and/or transcribed. Although Mr. Jenkins was found guilty at trial, he should be given the benefit of the doubt in circumstances where he already facing an outrageously long sentence of 225 months, more than four times what it should have been,[2] and where his father was improperly brought from Florida to New York to testify against at trial in a manner which offended public decency and which apparently drew this Court's ire.

---

[2]Jenkins' sentence was unfairly enhanced as follows:
1. Two levels because the material allegedly involved a prepubescent minor.
2. Four levels because the material allegedly portrayed sadistic or masochistic conduct or other depictions of violence;
3. Two levels because the offense allegedly involved the use of a computer;.
4. Five levels because the offense allegedly involved 600 or more images.

These "all but inherent" enhancements resulting in a 13 level increase. See United States v. Dorvee, 616 F.3d 174, 186 (2nd Cir. 2010). Absent these enhancements, Jenkins would have been at a total offense level of 22, which, when combined with a criminal history category of I, yields a guideline range of 41-51 months. USSG Ch. 5, Pt. A (Sentencing Table). Instead, Jenkins' offense level was unjustly inflated to 35 and his guideline range was therefore 168 to 210, not including the two level obstruction of justice enhancement.

### 3. Punishment, Deterrence, Protection of the Public and Rehabilitation

Beginning the middle part of the last century, an enthusiasm for harsher punishment and longer periods of incarceration began to pervade the public discourse. The policy choices that resulted have created an unparalleled rate of incarceration—nearly 2.23 million people, or one out of every 100 adults, are currently imprisoned in the United States. This is a distinct departure from the nation's historical experience as well as the modern experience of peer democracies. Dept. of Justice, Bureau of Justice Statistics, L. Glaze & E. Herberman, <u>Correctional Populations in the United States</u>, 2012, at 3 (2013), http://www.bjs.gov/content/pub/pdf/cpus12.pdf. The United States now holds the highest prison population rate in the world, over 5 to 10 times more than western European democracies. Int'l Ctr. for Prison Studies, R. <u>Walmsley, World Prison Population List 1–3</u> (10th ed.2013). Though home to only five percent of the world's population, the United States accounts for nearly twenty-five percent of its prisoners. Congressional Research Service, S. Kirchhoff, <u>Economic Impacts of Prison Growth</u> (2010), http:// fas.org/sgp/crs/misc/R41177.pdf

As recognized by Judge Davis, along with many other jurists and experts, "[b]y all accounts, these 'tough on crime' policies have been an abject failure. A rapidly accumulating group of multidisciplinary research studies have come to the conclusion that the rate of incarceration in the United States needs to be significantly reduced, and both the executive and legislative branches seem to agree." <u>United States v. Valdovinos</u>, No. 13–4768760 (slip op. July 25, 2014) (Davis, J., dissenting).

This change in course has been partially brought about by the strain these policies have caused taxpayers. On average, each prisoner costs taxpayers $28,948 annually *PSR ¶* 66. Studies published by the Brookings Institute have shown that corrections expenses total $80 billion per year;

Page 9 of 9

and this amount soars to $260 billion once police, judicial, and legal services are included. The Hamilton Project, M. Kearney, et al., Ten Economic Facts about Crime and Incarceration in the United States (2014), http://www.brookings.edu/research/reports/2014/05/10-crime-facts

The modern policy towards less incarceration is not furthered by imprisoning a nonviolent, productive citizen like Mr. Jenkins for 225 months plus. A sentence of one month to run concurrent with the sentence he is currently serving is consistent with this modern trend and the sentencing factors recognized in § 3553(a).

## CONCLUSION

For the foregoing reasons, it is respectfully submitted that a sentence of one month, to run concurrently with the sentence Mr. Jenkins is currently facing is sufficient but not greater than necessary to satisfy the objectives and purposes of sentencing. Mr. Jenkins respectfully requests that he be incarcerated at FMC Devens, or at FCI Ottisville due to their proximity to his parents and the services they offer.

Dated:	New York, New York
	January 12th, 2016                        _____/s_____
	                                           Daniel DeMaria, Esq. (518452)

	                                           Merchant Law Group LLP
	                                           535 Fifth Avenue, Fl. 25
	                                           New York, New York 10017
	                                           Tel: 212-658-1455
	                                           Fax: 877-607-5419
	                                           ddemaria@nyslitigators.com

Received 3/3/15 Exhibit

| FINANCIAL INFORMATION |||||
|---|---|---|---|---|
| INCOME |  | EXPENSES | BAL. | MO. PMT |
| YEARLY MONTHLY WEEKLY  1200 |  | RENT or MORTGAGE PAYMENT |  |  |
| PAYMENT METHOD (Circle One)  Cash Check Commission Other |  | UTILITIES |  | 150 p20 |
| SPOUSE SIGNIFICANT OTHER OCCUPATION |  | GROCERIES |  | 300 |
| YEARLY MONTHLY WEEKLY |  | CHILD CARE |  |  |
| YEARLY MONTHLY WEEKLY |  |  |  |  |
| OTHER SOURCE OF INCOME |  | CHILD SUPPORT (Ordered or Voluntary?) |  |  |
| Part-time job<br>Child support<br>Alimony<br>Public Assistance<br>Food stamps<br>Civil settlement<br>Other |  | ALIMONY  property tax | 6,000 | 500 |
|  |  | AUTO INSURANCE | 650/12 |  |
|  |  | OTHER  h. ins ner | 1000/12 |  |
| PAYMENT METHOD (Circle One)  Cash Check Commission Other |  | OTHER |  |  |
| ASSETS |  | LIABILITIES | BAL. | MO. PMT |
| CASH |  | PERSONAL LOANS |  |  |
| SAVINGS ACCOUNT  12K |  | SCHOOL LOANS |  |  |
| CHECKING ACCOUNT  15.19  300 |  | TOTAL CREDIT CARD DEBT | 8000 |  |
| STOCKS BONDS RETIREMENT ACCOUNTS?  Yes or No<br>(Describe) |  | OUTSTANDING TAXES FINES RESTITUTION |  |  |
|  |  | BUSINESS LIABILITIES |  |  |
| REAL ESTATE |  | OUTSTANDING MEDICAL BILLS |  |  |
| DATE PURCHASED |  | OTHER DEBTS |  |  |
| PAST DUE PENDING FORECLOSURE?  Y |  | BANKRUPTCY |||
| ADDRESS |  | EVER FILED FOR BANKRUPTCY? (Circle One) | YES | NO |
|  |  | LOCATION OF COURT |  |  |
| CURRENT MARKET VALUE |  | TYPE OF BANKRUPTCY FILED |  |  |
| EQUITY |  | YEAR FILED  AMOUNT DISCHARGED $ |||
|  |  | NOTES:  Boat Scarab (1998) $5,000<br>ATV - Polaris 2q(1998) -$2,000 |||
| OTHER ACCOUNTS ASSETS<br>VALUABLE PROPERTY (Jewelry, collections, etc.) |  |  |  |  |
| BUSINESS ASSETS |  |  |  |  |
| MOTOR VEHICLES - Ownership<br>YR 03 MKE Dodge MDL Ram  8,000 |  | MOTOR VEHICLES - Loans - Leases<br>Creditor | — | — |
| YR MKE MDL |  | Creditor |  |  |
| YR MKE MDL |  | Creditor |  |  |

-5-